Mr. Justice James
delivered the opinion of the court.
This cause comes here on exceptions to the instructions given to the jury at the trial.
The bill of exceptions shows that plaintiffs produced evidence, that in January, 1875, the defendant received from them three packages, two for delivery in New York and one for delivery in Philadelphia ; that on receiving them.) the agent of the Express Company gave for each package a bill of lading, which contained, with a difference only as to the consignees, this clause: “ Received from M. W. Galt, Bro. & Co., one box, value asked, not given; for which this company charges ——; marked ——, &c.; which it is mutually agreed is to be forwarded to our agency nearest or most convenient to destination only, and there delivered to other parties to complete the transportation. It is part of the consideration of this contract, and it is agreed that the said Express Company are forwarders only, and are not to be held liable or responsible for any loss or damage to said property while being conveyed by the carriers to whom the same may be by said Express Company intrusted, or arising from the dangers of railroads, ocean or river navigation, steam, fire in stores, depots or in transit, leakage, breakage, or from any cause *133 whatever, unless, in every case, the same be proved to have occurred from the fraud or gross negligence of said Express Company or their servants ; nor in any event shall the holder hereof demand beyond the sum of fifty dollars, at which the article forwarded is hereby valued, unless otherwise herein expressed, or unless specially insured by them and so specified in this receipt ; which insurance shall constitute the limit of the liability of the Adams Express Company.”
That the three receipts thus signed by the agent of the company were contained in a book furnished by the company to the plaintiffs ; that, excepting the charge for freight, the blanks therein were filled up by plaintiffs’ bookkeeper before they were signed ; that no question was asked, and nothing was said by either party as to the contents or value of the packages; that the Express Company placed the three packages in a car set apart for its use, attached to the train of the Baltimore & Potomac Railroad Company, for transportation to the consignees at New York and Philadelphia : that, while on its way to Baltimore, this train collided at Benning’s Station with another train, whereupon the Express Company’s car, with others, caught fire from the locomotive and was burned, together with the packages in question and a considerable quantity of valuable goods and a large amount of money ; that this collision was caused by the negligence of the switch tenders in the employ of the Baltimore & Potomac Railroad Company at Benning’s, who had opened the switch for another train to pass on to the siding, and there remain until the night express from Washington should pass, and had failed to change it back ; that when the engineer caught sight of the switch-target at Benning’s, then only thirty yards distant, the train was running about thirty-five miles an hour, and, notwithstanding his best efforts to check its speed, passed on to the siding with such momentum that it telescoped half the train there standing, killing the postal clerk and injuring several other persons ; that within five minutes the train was on fire from end to end, and a large amount of goods in the Express Company’s car were in consequence destroyed. «
*134 The plaintiffs further introduced evidence tending to show that, of the packages shipped by them, one’contained silver-plate, coin, &c., amounting in value to $699.38, another an amethyst ring worth $12, and a third a silver spoon worth -$8 ; that a day or two after the collision a barrel was exhibited to one of the plaintiffs by the agent of the company, as containing the debris of all the packages carried in the company’s car ; that no part of thi3 debris was delivered to the plaintiffs, the agent stating that he was instructed to send it to the central office in New York.
On cross-examination of plaintiffs’^ witnesses, some question was raised whether the tender of the switch at' Ben-ning’s was in the employ of the Baltimore & Potomac railroad or of the Washington City'“and Point Lookout railroad ; but it was stated that he had previously served at that switch, and that the switch itself belonged to the Baltimore & Potomac railroad.
On the part of the defendant, evidence was introduced to show that the company’s agent sent the whole of the debris to the central office in New York, forwarding also the detailed statement of plaintiffs’ goods, aud that the general agent in New York took charge of the debris and delivered the silver found in it to one Hart, of New Orleans, who claimed to have shipped it. The defendant further offered •evidence to show that there was nothing to indicate that plaintiffs’ packages were of any special value.
It thus appears by evidence offered¡by the defendant, and therefore by admission, either that the plaintiffs’ packages were utterly destroyed at the time of the collision, and failed by that reason to reach their destination, or that the whole or such part of them as were saved and forwarded was delivered to some other party.
Upon this evidence the defendant asked the court to instruct the jury as follows :
“ 1st. That the execution of the express receipt or bill of lading of the Adams Express Company and its acceptance by the plaintiffs concurrently with the delivery and receipt of the property, constitute a special contract between the *135 parties for the carriage of the goods; and the rights and liabilities of the respective parties are to be governed thereby, and the conditions and exemptions therein set forth are to be binding on each.” This instruction was granted with the following proviso : “ Provided, That the jury do not find that the loss of the packages was occasioned by the gross negligence of the defendant.”
“ 2d. If the jury believe from the evidence that at the time when the packages in question were delivered by plaintiffs to defendant for carriage, the said defendant or its servants or agents asked of said plaintiffs the value of said packages, and that the said plaintiffs refused to give such value and concealed the same, so that the said defendants, as carriers, were ignorant of the value thereof; that the said plaintiffs, if entitled to recover at all, can only recover in this action the sum of fifty dollars, with interest from the time of the said loss.” This instruction was given with the qualification attached to the first.
“ 3d. That it was the duty of the plaintiffs, at the time of the delivery of the packages in question to the Adams Express Company under the terms of the contract, to state the value of said packages, if they desired, in case of loss, to recover a sum exceeding fifty dollars.” This instruction was given with the qualification already stated.
“ 4th. That, irrespective of the terms of the contract, requiring the shipper to state the value, or, in default of such statement, limiting the liabilities of the company to the sum of fifty dollars, it was incumbent upon the plaintiffs to disclose the value in view of the fact that the package contained articles of great value, such as silver,” &c. This instruction also was given with the same qualification.
By their verdict for an amount largely exceeding the limit proposed in the bill of lading, the jury necessarily found that the loss was occasioned by the gross negligence of the defendant.
We do not propose to adopt the mechanical method of considering these instructions and exceptions seriatim, since the issues raised by them can be better disposed of by a *136 statement of the general principles on which this court has agreed.
Undoubtedly, a written instrument signed only by one party, but accepted and acted upon by the other, may furnish the terms of a mutual contract. Although the accepting party does not become technically a party to the writing, he assents to its terms as the terms of his unwritten agreement, and thus the same terms are agreed upon by both. In this way the plaintiffs and the defendant actually entered into a special contract upon the terms of the bill of lading given by the latter. But it does not follow that all of the terms thus actually agreed upon are lawful. If any of them constitute an agreement which such parties are not permitted by the law to make, they are simply void, and do not govern the rights or obligations of those parties.
In applying this principle, we observe,-in the first place, that the receipt before us stipulates that Adams Express Company are forwarders only. But it is to be gathered from the evidence set out in the bill of exceptions and from the verdict, that they were found to be actually carriers? using, as their instrumentality of transportation, the roads and servants and trains of the Baltimore & Potomac Bail-road Company. The law determines the character of this business and occupation, and it assigns to Adams Express Company the status of common carriers, and we hold that this status is not affected by an agreement of parties that they are not carriers but only forwarders.
In the next place, the bill of lading provides that the Express Company “ are not to be held liable or responsible for any loss or damages ” to the property received by them, “ from any cause whatever, unless, in every case, the same be proved to have occurred from the fraud or gross negligence of said Express Company or their servants ; ” and it then undertakes to limit the responsibilty' of the company by a further condition that, even in case of loss or damage by the fraud or gross negligence of the company, the holder of the receipt shall not “ demand beyond the sum of fifty dollars, at which the article forwarded is hereby valued, unless other-' *137 wise herein expressed, or unless specially insured by them, and so specified in this receipt.” It was insisted in the argument on behalf of the defendant, that the legal effect and intendment of this clause is simply to provide, in the absence of a special declaration of value, for a rule of valuation ; and that it is competent for parties, even where the liability arises from gross negligence, to agree upon the fact of value. Authorities were cited which have given this interpretation to the clause in question, and have recognized the validity of the agreement as thus interpreted. The first question, then, relates to the proper interpretation of the clause; and we hold, that, inasmuch as this condition undertakes to provide against liability for loss or damage arising from gross negligence, the legal effect of that part of it which speaks of value is, not to ascertain and adjust the value of property, but to limit the damages, the penalty to which the law would have subjected the carrier on account of his fault. By tendering such a condition the carrier substantially says to the shipper: “ I am aware that the law would hold me reponsible for the actual value of this article, although not disclosed to me, in case it should be lost or destroyed by means of my gross negligence ; but I propose to exempt myself from so much of that liability as may exceed fifty dollars, by assuming that the actual damage to you, occasioned by my fault, is only fifty dollars; and this I propose to do by assuming that the article is worth only fift y dollars.5 This is not in good faith a valuation of property. Its legal effect, and, therefore, its legal intent, is to restrict the measure of damages recoverable in case of negligence, and thus to exempt the wrong-doer from a part of his responsibility ; and, as matter of interpretation, the meaning of a clause which operates only in this way is not to be changed by giving to it an arbitrary name. It may be added that by its terms, the clause in question is to be applied as well in cases of losses by the fraud of the company, as in cases of losses by its gross negligence ; and that the rule of interpretation must, therefore, be uniform in both cases. It would certainly be a very remarkable interpretation which *138 ■should hold that this clause only meant in good faith to provide an ascertainment of the value of the property, in case it should be made way with by the fraud of the carrier.
We hold, then, that the intent and operation of this condition is merely to exempt the Express Company from a part of its obligations as a common carrier, in case the damage done to the shipper by its fault shall exceed the amount of fifty dollars. If we are right in this conclusion, we have next to consider whether a common carrier can lawfully stipulate for a partial exemption from his full liability in cases of .gross negligence.
We are aware that in some of the States, notably in some which possess, or perhaps are possessed by vast railroad corporations, the doctrine of exemption by special contracts has been carried to extremes; but if this court were disposed to follow such a lead it is prohibited to do so by the ruling of its superior, the Supreme Court of the United States. In Lockwood’s case, 17 Wallace, 357, that court, after the most exhaustive examination of American and English authorities, has laid down the principle by which we must be guided; namely, that a common carrier, whether of goods or passengers, cannot stipulate for exemption from responsibility for the negligence of himself or his servants. Id., 384. It is true the question immediately before the court related to the carriage of passengers ; but it inevitably involved the discussion and determination of principles of public policy and of law which apply completely to the business of common carriers of goods, especially of common carriers by railway. We would have held and enforced that doctrine without such superior authority. We now feel disposed as well as bound to apply the principle on which that case turned in all the fullness of its spirit. We hold, then, that the principle of law which, for considerations of public welfare, forbids a common carrier to bargain in particular cases for complete exemption from responsibility for a violation of his duties, forbids him to impair his obligations to the community by bargaining in particular cases for an exemption from a considerable part of that responsibility. The ground on which *139 the rule is based, that even the shipper’s perfect consent cannot wholly relieve the carrier, is, that the subject which he undertakes to regulate by contract is not his own, but a public right.
Practically, every kind of common carrier becomes an agency which the rest of the community are compelled to employ, and with little inquiry as to his peculiar fitness. In other words, he acquires in some degree the position of a monopoly. And if this be a sufficient reason for imposing peculiar duties and exactions upon ordinary common carriers, it applies with incomparably greater force to railroads and to carriers, who, by employing those roads as instrumentalities of their transportation, make those instrumentalities their own. They are universally authorized to appropriate private property on the very ground that sucti1' appropriation is for the public use ; and if they are understood, in contemplation of law, to be occupied in using and managing property for public welfare, their business of transportation, which is the only use to which they apply the property so appropriated, must be understood to be carried on for the public welfare. Their obligation to exercise, not only a reasonable but a very high degree of care in that business, becomes therefore a duty to the public, and can neither be put aside nor impaired by the consent of individual members of the community. No single person is allowed to agree that such a carrier, or that any carrier who owes a public duty, may with impunity be negligent in his case, for the reason that the carrier is thereby invited to omit his duty in other cases, and thus to injure the whole community. Can it be possible that these considerations, on which the rule against total exemption is based, lose their force when the carrier is invited to violate his public duty by an agreement that he may violate it at half price ? The principle of the rule is, that any agreement which operates to interfere with the public right touching the care and good faith of common carriers, is an agreement against public policy and welfare, and is therefore void ; and as an agreement that his negligence shall be cheap must operate in this way, it necessarily falls within that principle.
*140 We are of opinion, therefore, that the court instructed the jury correctly, in allowing them to find for the full value of plaintiff'’s property, notwithstanding the conditions of the bill of lading, if they should find that the loss was occasioned by the gross negligence of the defendant.
As to the duty of a shipper to advise the carrier that the actual was greater than the apparent value of the article shipped, we hold that his omission to give such information does not affect his rights, unless it justifies the carrier in adopting the course of conduct by which the loss occurred. A carrier who is allowed to suppose that an article may be handled in a particular manner is not responsible for so handling it, and the shipper has to submit to the natural effect of his own omissions to give proper information. But that case is not before us. It can hardly be imagined that the omissions of the plaintiffs to disclose the exceptional value of their shipment tempted the defendant to wreck and burn its train.